Chester KOWALCZYK, Appellant

v.

DEPARTMENT OF JUSTICE,
et al., Appellees.

No. 94–5211.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 8, 1995.

Decided Jan. 9, 1996.

---

Chester Kowalczyk, appearing pro se, filed the brief for appellant.

Dwayne Rawlings, Student Counsel, argued the cause for appellant, with whom Steven H. Goldblatt, appointed by the court, Ellen R. Finn, Attorney, and Genevieve Augustin and Michael J. McElroy, Student Counsel, were on the brief for amicus curiae in support of appellant.

Daniel F. Van Horn, Assistant United States Attorney, argued the cause for appellees, with whom Eric H. Holder, Jr., United States Attorney, and R. Craig Lawrence, Assistant United States Attorney, were on the brief. John D. Bates, Assistant United States Attorney, entered an appearance.

Before: GINSBURG, HENDERSON and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

Chester Kowalczyk brought this action in the district court for the District of Columbia seeking an order compelling the Federal Bureau of Investigation to comply with his request for records under the Freedom of Information Act. The court entered summary judgment in the Bureau's favor. Kowalczyk appeals from that judgment, claiming that his FOIA request obligated the Bureau to search for responsive documents not only in the files at its headquarters, to which he sent the request, but also in the files at its New York field office, to which he made no reference in the request. For the reasons set forth below, we hold that Kowalczyk's request did not obligate the Bureau to search its New York field office, and we affirm the judgment of the district court.

## I. Background

Chester Kowalczyk was convicted in the United States District Court for the Eastern District of New York of tampering with motor vehicle identification numbers, in violation of 18 U.S.C. § 511, and attempting to

evade federal income tax, in violation of 26 U.S.C. §§ 7201, 7206. On July 31, 1991 he sent to the headquarters of the Federal Bureau of Investigation in Washington, D.C. a request under the Freedom of Information Act, 5 U.S.C. § 552, for "all records in agency files, including but not limited to the Federal case number 88 CR 701 and counsel for the defense Louis E. Diamond and Louis Rosenthal Esq." This request informed the FBI that Kowalczyk was "an incarcerated federal prisoner ... engaging in post-conviction litigation." Five months later, having heard nothing from the FBI, Kowalczyk sent a letter "appealing" the agency's apparent denial-by-silence of his request, which he described as a request for "all Agency records pertaining to ... Criminal Case Number 88 CR 701, in the Eastern District of New York."

When the FBI then notified Kowalczyk that its FOIA backlog would delay processing of his request for "many months," Kowalczyk brought this suit in the district court for the District of Columbia to compel the Bureau to produce the documents promptly. It was at a status conference in May 1994—after the Bureau had moved for summary judgment—that Kowalczyk says he first realized that the agency had searched for documents responsive to his FOIA request at its Washington headquarters only. Kowalczyk argued that the Bureau was obligated to search also at its New York field office. The district court disagreed and entered summary judgment for the FBI.

## II. Analysis

■ We can affirm the summary judgment for the FBI only if the agency has shown that the evidence, when viewed in the light most favorable to Kowalczyk, raises no genuine issue of material fact. *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C.Cir.1994). Materiality is, of course, a function of the applicable legal standard, which in this case is that "an agency responding to a FOIA request must conduct a search reasonably calculated to uncover all relevant documents, and, if challenged, must demonstrate beyond material doubt that the search was reasonable." *Truitt v. Depart-*

*ment of State*, 897 F.2d 540, 542 (D.C.Cir. 1990); *see also McGehee v. C.I.A.*, 697 F.2d 1095, 1101 (D.C.Cir.1983) ("the burden of persuasion on this matter is properly imposed on the agency"). Thus, the issue here is not whether there might be any further documents. *Truitt*, 897 F.2d at 542.

■ In considering an agency's motion for summary judgment in a FOIA case, the court may rely upon affidavits of agency officials "describing [the agency's] search procedures and explaining why a more thorough investigation would have been unduly burdensome." *McGehee*, 697 F.2d at 1102. "If [ ] the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." *Truitt*, 897 F.2d at 542.

■ Under the FOIA, an agency is obliged to make "promptly available" records that are "reasonably describe[d]" in a written request therefor and are not exempt from disclosure. 5 U.S.C. §§ 552(a)(3)(A), 552(b). A request reasonably describes records if "the agency is able to determine precisely what records are being requested." *Yeager v. Drug Enforcement Administration*, 678 F.2d 315, 326 (D.C.Cir.1982). The Bureau says Kowalczyk's request did not alert its FOIA compliance staff that Kowalczyk wanted records that might be in the agency's New York field office. Kowalczyk says the staff should have realized that.

■ In resolving this dispute, we begin by setting aside Kowalczyk's letter of appeal. The FBI searched for records responsive to Kowalczyk's initial request on August 22, 1991—within three weeks of receiving it and about four months before Kowalczyk sent his second letter. A reasonable effort to satisfy that request does not entail an obligation to search anew based upon a subsequent clarification. The FBI generally handles requests in the order in which it receives them. Requiring an additional search each time the agency receives a letter that clarifies a prior request could extend indefinitely the delay in processing new requests. *Cf. Biberman v. F.B.I.*, 528 F.Supp. 1140, 1143 (S.D.N.Y.1982) ("It would be untenable to hold that, as the [FOIA] litigation proceeds, a plaintiff, by

continually adding new requests ... could command a priority based on the date of the initial requests").

Focusing upon Kowalczyk's original FOIA request, we see that he made no reference to the New York field office or, indeed, to New York. According to the amicus curiae, however, "the documents maintained by headquarters ... made it abundantly clear that the investigation which led to Mr. Kowalczyk's prosecution had originated in the FBI's New York field office." This assertion is unsupported by any citation to a specific document. Moreover, the amicus concedes that "virtually none of the documents identified or processed by the FBI related to the issues underlying Kowalczyk's indictment and conviction. All but one ... related only to the FBI's forfeiture proceedings against automobiles purchased from Mr. Kowalczyk by third parties."

Despite Kowalczyk's failure to give the court any guidance, we have reviewed all the documents that the FBI submitted to the district court along with the affidavits describing the search it made. The Bureau located these documents by running Chester Kowalczyk's name through a file-subject index of individuals and organizations. The documents do indicate that Kowalczyk was indicted in the Eastern District of New York and that the Bureau's New York field office had records of his activities involving vehicle identification numbers and stolen cars. We have found no document bearing the case number "88 CR 701," however, and Kowalczyk's FOIA request states nothing about the nature of the charges in that case. Indeed, it does not even state that Kowalczyk was a defendant in that case.

■ The information in Kowalczyk's request, therefore, did not enable the FBI to determine that the New York field office had responsive records. The Bureau might, at best, have speculated about the connection between "Federal case number 88 CR 701," to which Kowalczyk referred, and Kowalczyk's indictment in the Eastern District of New York, to which the records coming to Bureau headquarters from the New York field office referred.

■ The Bureau's duty, however, is only to "conduct a search reasonably calculated to uncover all relevant documents." *Truitt*, 897 F.2d at 542. The agency is not required to speculate about potential leads. More specifically, the Bureau is not obliged to look beyond the four corners of the request for leads to the location of responsive documents. Of course, if the requester discovers leads in the documents he receives from the agency, he may pursue those leads through a second FOIA request.

■ This is not to say that the agency may ignore what it cannot help but know, but we suspect that it will be the rare case indeed in which an agency record contains a lead so apparent that the Bureau cannot in good faith fail to pursue it. If the agency may reasonably interpret the request to be for records in a specific office or offices only—the office to which the request was sent or any office(s) named in the request— then upon discovering that it has other responsive records elsewhere, it may reasonably infer that the requester already has those records, is seeking them through a separate request, or, for whatever reason, does not want them. If, on the other hand, the requester clearly states that he wants all agency records on a subject, i.e., regardless of their location, but fails to direct the agency's attention to any particular office other than the one receiving the request, then the agency need pursue only a lead it cannot in good faith ignore, i.e., a lead that is both clear and certain.

In any event, Kowalczyk's is not one of those rare cases. His FOIA request contains so little information that, in order to incur any obligation to search the New York field office, the Bureau would have had to find a document at headquarters specifically indicating that documents related to a case bearing the number 88 CR 701 were located in its New York office. Kowalczyk brings no such document to our attention, nor have we found one among the documents that the FBI located in Washington.

## III. Conclusion

Kowalczyk does not challenge the FBI's response to his FOIA request in any respect

other than the Bureau's failure to search its New York office. For the reasons set out above, we conclude that the agency reasonably limited its search to files located at its headquarters, which is where Kowalczyk sent his request. The summary judgment rendered by the district court is therefore

AFFIRMED.